UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
C.C.M.S., *d/b/a* Community Counseling and
Mediation Services, and JEAN'S PLACE
HOUSING DEVELOPMENT FUND
CORPORATION,

                Plaintiffs,

            v.                           **MEMORANDUM AND ORDER**

THE CITY OF NEW YORK, *Acting through*        22-CV-3080 (RPK) (CLP)
*the New York City Department of Housing*
*Preservation and Development*,

                Defendant.
------------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

        Plaintiffs Community Counseling and Mediation Services ("CCMS") and Jean's Place Housing Development Fund Corporation purchased property in East New York in order to develop a supportive housing facility for formerly homeless individuals. After plaintiffs cleaned up the property and obtained a variance to permit residential use, plaintiffs requested financing through the City of New York's Senior Affordable Rental Apartments ("SARA") Program. The City declined to waive a provision in the SARA Program's terms that sets the available financing based on the property's original purchase price rather than its current appraised value. Plaintiffs then filed suit, challenging the constitutionality of the City's refusal to waive the SARA Program's acquisition cost policy. The City has moved to dismiss the complaint for failure to state a claim. For the reasons explained below, the motion is granted.

## BACKGROUND

        The following facts are taken from the complaint and are assumed true for purposes of this order.

1

Plaintiffs CCMS and Jean's Place Housing Development Fund Corporation are non-profit corporations that provide, among other things, supportive housing services to individuals and families in Brooklyn.  Compl. ¶¶ 1, 10–11 (Dkt. #1); Compl., Ex. A 4 (Dkt. #1-1).  In 2015, at the request of the City of New York's Department of Housing Preservation and Development ("HPD"), plaintiffs purchased for $975,000 a former industrial site in East New York in order to develop a supportive housing facility for homeless individuals, with a preference for the elderly.  Compl. ¶¶ 3, 14–15.  The property was zoned for manufacturing and located in the East New York Industrial Business Zone, although HPD indicated that the area could be rezoned for residential use and advised plaintiffs as to the process and timeline for rezoning.  *Id*. at ¶¶ 14, 17.  HPD "asked that Plaintiffs . . . develop [the site] for affordable housing."  *Id*. at ¶ 22.

Over the next five years, plaintiffs incurred more than $1,250,000 in predevelopment expenses relating to the project, which they named the "Jean's Place Project."  *Id*. at ¶¶ 3, 24.  Plaintiffs demolished three manufacturing buildings on the property, removed contaminants pursuant to New York's Brownfield Cleanup Program, and obtained a variance that would allow the Jean's Place Project to proceed.  *Id*. at ¶¶ 4, 19–20, 22–23.  The property was appraised in 2020 at $7,500,000, and it was appraised again in 2022 at $6,900,000.  *Id*. at ¶ 21.

Plaintiffs requested financing through HPD's SARA Program, which provides low-interest financing to support the construction of affordable housing for seniors.  *Id*. at ¶¶ 25, 28.  The SARA Program's "acquisition cost policy" limits the amount of available financing based on "the lesser of [the property's] purchase price" and its "appraised value," without regard to "an increased acquisition price from a private site rezoning."  *Id*. at ¶ 28.  However, the rules governing the SARA Program permit HPD, "in its sole discretion . . . at any time and without prior notice," to waive compliance with, or amend, any terms of the SARA Program, including the acquisition cost

policy. *Ibid*. Plaintiffs asked HPD to waive the acquisition cost policy and to provide financing based on the property's appraised value. *Id*. at ¶ 25. HPD refused and determined the financing available to plaintiffs using the property's original purchase price. *Id*. at ¶¶ 6, 26.

Plaintiffs filed suit, claiming that the City of New York violated their equal-protection and due-process rights by "selectively, arbitrarily and capriciously refusing to waive the acquisition cost policy." *Id.* at ¶ 52. Plaintiffs seek a declaratory judgment that the acquisition cost policy violates the Fourteenth Amendment, an injunction prohibiting the City of New York from selectively enforcing the acquisition cost policy, and damages pursuant to 42 U.S.C. § 1983. *See* Compl. ¶¶ 38–55.

Defendant filed a motion to dismiss the complaint for failure to state a claim.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint based on "failure to state a claim upon which relief can be granted." To avoid dismissal on that basis, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing Fed. R. Civ. P. 8). The facial "plausibility standard is not akin to a 'probability requirement.'" *Ibid*. (quoting *Twombly*, 550 U.S. at 556). But it requires a plaintiff to allege sufficient facts to enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*. In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept all facts alleged in the complaint as true. *Ibid*. But it need not adopt "[t]hreadbare

recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Ibid*.

## DISCUSSION

Defendant's motion to dismiss is granted.

**I.     The Complaint Fails to State a Due-Process Claim**

Plaintiffs have not plausibly alleged that defendant's refusal to waive the SARA Program's acquisition cost policy deprived them of due process in violation of the Fourteenth Amendment. "To state a claim for deprivation of property without due process of law, a plaintiff must identify a property interest protected by the Due Process Clause." *Harrington v. County of Suffolk*, 607 F.3d 31, 34 (2d Cir. 2010). "Anticipated benefits from a government source may be entitled to due process protections." *Kern v. Contento*, No. 21-1672, 2022 WL 1112767, at *1 (2d Cir. Apr. 14, 2022). But "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *see Town of Castle Rock v. Gonzales*, 545 US. 748, 756 (2005). "A 'legitimate claim of entitlement' exists where, under applicable state law, 'absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted.'" *Mordukhaev v. Daus*, 457 F. App'x 16, 19 (2d Cir. 2012) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 153 (2d Cir. 2006)). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock*, 545 U.S. at 756. "Where [an] administrative scheme does not require a certain outcome, but merely *authorizes* particular actions and remedies, the scheme does not create 'entitlements' that receive constitutional protection under the Fourteenth Amendment." *Sealed v. Sealed*, 332 F.3d 51, 56 (2d Cir. 2003); *see RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 918 (2d Cir. 1989) ("Even if in a particular case,

objective observers would estimate that the probability of issuance was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest.").

The complaint does not show that plaintiffs were deprived of a protectable property interest. There is no allegation that plaintiffs were denied financing that is guaranteed under the SARA Program's terms, *see* Compl. ¶¶ 25–30; instead, plaintiffs allege that HPD failed to provide *more* financing than is generally permitted under the SARA Program's acquisition cost policy, *id*. at ¶ 25. But the rules governing the SARA Program give HPD "sole discretion" to waive the SARA Program's terms, and so plaintiffs' allegations do not show the existence of a protectable property interest in financing based on their property's current appraised value, rather than its original purchase price. *See, e.g.*, *Town of Castle Rock*, 545 U.S. at 756; *Sealed*, 332 F.3d at 56; *RRI Realty Corp.*, 870 F.2d at 918.

Plaintiffs' counterargument is not persuasive. Plaintiffs argue in their memorandum of law that defendant "promised to waive the 'lesser of' term of the SARA Program." Mem. in Opp'n to Mot. to Dismiss 5 (Dkt. #15) (citation and quotation marks omitted). It is not clear that such a promise would give rise to a protectible property interest. *Cf. McMenemy v. City of Rochester*, 241 F.3d 279, 286 (2d Cir. 2001) ("Even if the Chief at one time intended to promote McMenemy and even if he expressed that intention as a promise, the City's broad discretion in matters of promotion, granted by statute, prevent that promise from ripening into an entitlement."). But assuming *arguendo* that it would, the complaint does not plausibly allege any such promise. The complaint details defendant's interactions with plaintiffs regarding the property, stating that defendant "active[ly] encourage[d]" plaintiffs to purchase the property, Compl. ¶ 14, "asked that Plaintiffs . . . develop it for affordable housing," *id*. at ¶ 22, and "advised Plaintiffs as to the process

5

and timeline for rezoning the lot for residential use," *id*. at ¶ 17. Those allegations may show that defendant supported the Jean's Place Project, but they do not show that defendant promised to waive the SARA Program's acquisition cost policy.

Plaintiffs assert that the complaint does in fact allege that defendant promised to waive the policy, pointing to a sentence in the complaint's introduction stating that "[p]laintiffs relied on HPD's support and approval to move forward with the Jean's Place Project, including that the current appraised value of the land, and not the original purchase price, would be used as the approved acquisition cost when determining SARA Program financing for the project." *Id*. at ¶ 6. But that sentence is focused on plaintiffs' reliance and does not actually state that defendant promised to waive the acquisition cost policy. Nor does the complaint's subsequent discussion of defendant's "support and approval" suggest that defendant promised to waive the policy. For example, plaintiffs allege they were "shocked . . . by HPD's refusal to recognize the current appraised value of the Site" because "HPD asked CCMS to purchase the Site notwithstanding the zoning issue," provided "considerable communications . . . promising and expressing support for the Jean's Place Project," "had previously waived the requirement for other CCMS-sponsored projects," and "waived the requirement for other developers of similar projects." *Id*. at ¶¶ 26–27. While the introductory sentence is not a model of clarity, it is not plausibly read as representing that defendant promised to waive the acquisition cost policy when considered in the context of a complaint that elsewhere describes defendant's words and deeds in detail without mentioning any such promise. Because the sentence alleges, at most, that plaintiffs had a "unilateral expectation" that they would receive financing based on the property's appraised value, *Bd. of Regents*, 408 U.S. at 577, it falls short of plausibly alleging a constitutionally protected property interest.

## II. The Complaint Fails to State an Equal-Protection Claim

Plaintiffs do not plausibly allege that defendant's refusal to waive the SARA Program's acquisition cost policy violated plaintiffs' Fourteenth Amendment right to equal protection of the laws. "The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, [courts] have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Ibid*. "A plaintiff who does not claim to be a member of a constitutionally protected class may bring an Equal Protection claim on one of two theories: selective enforcement or 'class of one.'" *Komondy v. Gioco*, 253 F. Supp. 3d 430, 440 (D. Conn. 2017) (citing *Cobb v. Pozzi*, 363 F.3d 89, 109–10 (2d Cir. 2004)); *see Hu v. City of New York*, 927 F.3d 81, 90 (2d Cir. 2019). To prevail on a selective-enforcement claim, "a plaintiff must prove that '(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as . . . malicious or bad faith intent to injure the person." *Hu*, 927 F.3d at 91 (citation omitted). To prevail on a "class of one" claim, a plaintiff must prove "(1) that she has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment." *Ibid*. (citation omitted). "[B]oth types of Equal Protection claims require a showing that the plaintiff was treated differently from another similarly situated comparator," although the required degree of similarity differs between the two theories—selective-enforcement claims require "a 'reasonably close resemblance' between a plaintiff's and comparator's circumstances," while "class of one" claims

require "an 'extremely high' degree of similarity between a plaintiff and comparator." *Id*. at 93 (citations omitted).

Plaintiffs fail to state a claim under either a selective-enforcement or class-of-one theory. First, as to a selective-enforcement claim, plaintiffs' allegations are too conclusory to show that the alleged "selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as . . . malicious or bad faith intent to injure a person." *Id.* at 91. Plaintiffs allege only that they "are informed and believe and thereon allege that this selective treatment was based on an intent to inhibit or punish Plaintiffs' exercise of their rights and/or to maliciously injure Plaintiffs in detriment of Plaintiffs' property interest in the project at issue." Compl. ¶ 52. This assertion, which is unsupported by any factual allegations in the complaint, is "conclusory and cannot be accepted as true at the motion to dismiss phase." *Lilakos v. New York City*, 808 F. App'x 4, 8 (2d Cir. 2020) (citing *Iqbal*, 556 U.S. at 678); *see, e.g.*, *Bristol v. Town of Camden*, --- F. Supp. 3d ----, 2023 WL 3004104, at *12 (N.D.N.Y. Apr. 19, 2023) (dismissing a selective-enforcement claim where plaintiffs alleged conclusorily that they "have been subject to selective treatment due to impermissible considerations, including a malicious or bad faith intent to injure Plaintiffs"); *Weinberger v. City of New York*, No. 17-CV-9998 (JMF), 2018 WL 3996935, at *2 (S.D.N.Y. Aug. 21, 2018) (same); *Hurley v. Town of Southampton*, No. 17-CV-5543 (JS) (AKT), 2018 WL 3941944, at *11 (E.D.N.Y. Aug. 13, 2018) (same).

Second, as to a class-of-one claim, plaintiffs have not identified a comparator with "an 'extremely high' degree of similarity" to plaintiffs. *Hu*, 927 F.3d at 93 (citation omitted). The complaint alleges that there have been "several prior developments where HPD chose to recognize the current appraised value of a project site," Compl. ¶ 6, and that "the agency had previously waived the [acquisition cost policy] for other CCMS-sponsored projects and, on information and

belief, has waived the requirement for other developers of similar projects," *id*. at ¶ 26; *accord id*. at ¶ 30. But "plaintiffs proceeding on a class of one theory cannot simply state in conclusory fashion that it was similar to a comparator[]. Rather, they must provide details showing that the comparators are similarly situated." *Contiguous Towing, Inc. v. State*, 202 F. Supp. 3d 269, 276 (E.D.N.Y. 2016); *see, e.g.*, *Lilakos*, 808 F. App'x at 8 (affirming the dismissal of a class-of-one claim where plaintiffs "include[d] dozens of allegations about the existence of other [comparators]" but failed to plead "specific facts showing that the comparators are 'similar in relevant respects' to [plaintiffs]") (citation omitted); *Kenmore Mercy Hosp. v. Daines*, No. 09-CV-162S, 2011 WL 4368564, at *5 (W.D.N.Y. Sept. 19, 2011) (dismissing a class-of-one claim because "[a]lthough plaintiff alleged there were other, similarly situated, landowners, he provided no details explaining the similarities"); *Kirton v. Doe*, No. 20-CV-10860 (KMK), 2023 WL 2586279, at *7 (S.D.N.Y. Mar. 21, 2023) ("[W]hile Plaintiff alleges he was treated differently than the other inmates still out on the block, he provides insufficient information to ascertain whether those inmates were similarly situated."); *Williams v. Novoa*, No. 19-CV-11545 (PMH), 2022 WL 161479, at *10 (S.D.N.Y. Jan. 18, 2022) (dismissing an equal-protection claim where plaintiff's allegations were "conclusory and identifie[d] comparators in the abstract").

Accordingly, the complaint fails to state an equal-protection claim.

## CONCLUSION

The motion to dismiss is granted. Plaintiffs may file a motion seeking leave to file an amended complaint within thirty days. Any such motion should include the proposed amended complaint as an exhibit and explain why leave to amend should be granted. If plaintiffs do not seek leave to amend within thirty days, judgment shall be entered and the case closed.

SO ORDERED.

                                                                     */s/ Rachel Kovner*
                                                                      RACHEL P. KOVNER
                                                                      United States District Judge

Dated: August 31, 2023
        Brooklyn, New York